UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AVONNIA D. McCOVERY,

                          Plaintiff,          07-CV-800

                                              **DECISION**
                 v.                           **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                          Defendant.
_____

## INTRODUCTION

        Plaintiff Avonnia D. McCovery ("plaintiff") brings this action

pursuant to Title XVI of the Social Security Act ("The Act")

seeking review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for Supplemental

Security Income benefits.[1]  Specifically, the plaintiff alleges

that the decision of the Administrative Law Judge ("ALJ") Timothy

M. McGuan denying her application for benefits was not supported by

substantial evidence in the record and was contrary to applicable

legal standards.

        The plaintiff moves for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c) and 42 U.S.C. 405(g) seeking to reverse the

Commissioner's decision or, in the alternative, remand to the

Commissioner for reconsideration of the evidence.  The Commissioner

_____

        [1] This case was transferred to the undersigned by the Honorable John T.
Curtin, Judge, United States District Court for the Western District of New
York by Order dated October 29, 2009.

also moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) on the grounds that the findings of fact of the Commissioner are supported by substantial evidence. For the reasons discussed below, I hereby deny the Commissioner's motion for judgment on the pleadings, grant plaintiff's motion for judgment on the pleadings, and remand this claim to the Commissioner for further proceedings consistent with this decision.

<u>**BACKGROUND**</u>

On September 13, 2004, plaintiff filed an application for Supplemental Security Income claiming that she had become disabled as of that date due to bilateral carpal tunnel syndrome and dysthymic disorder. (Transcript 25) (hereinafter "Tr."). Plaintiff's application was denied on February 8, 2005. (Tr. 48-51). She subsequently requested a hearing before an Administrative Law Judge ("ALJ") which took place on March 21, 2007. (Tr. 405-44). The plaintiff was represented by counsel. In addition to the plaintiff, a vocational expert also testified. In a decision dated June 20, 2007, the ALJ found that although the plaintiff had severe impairments due to bilateral carpal tunnel syndrome, dysthymia, right knee degenerative joint disease, obesity and back pain, she was not disabled within the meaning of the Act and had the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (Tr. 22). The ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied plaintiff's request for review on October 4, 2007. (Tr. 6-8). This action followed.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

Title 42, section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320 (1976). This section has been made applicable to SSI cases by 42 U.S.C. section 1383(c)(3). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this Court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhard, 335 F.3d 99,

105-06 (2d Cir. 2003); <u>see also</u> <u>Wagner v. Secretary of Health &</u>
<u>Human Serv.</u>, 906 F.2d 856, 860 (2d Cir. 1990)(holding that review
of the Secretary's decision is not *de novo* and that the Secretary's
findings are conclusive if supported by substantial evidence).

The Plaintiff and the Commissioner both move for judgment on
the pleadings pursuant to 42 U.S.C. 405(g)[2] and Rule 12(c) of the
Federal Rules of Civil Procedure. Section 405(g) provides that the
District Court "shall have power to enter, upon the pleadings and
transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner of Social Security, with
or without remanding the cause for a rehearing." 42 U.S.C.
§405(g)(2009). Under Rule 12(c), judgment on the pleadings may be
granted where the material facts are undisputed and where judgment
on the merits is possible merely by considering the contents of the
pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642
(2d Cir. 1988). If, after a review of the pleadings, the Court is
convinced that "the plaintiff can prove no set of facts in support
of [her] claim which would entitle [her] to relief," judgment on
the pleadings may be appropriate. <u>See</u> <u>Conley v. Gibson</u>, 355 U.S.
41, 45-46 (1957).

---

[2] As provided in Title XVI (Supplemental Security Income), codified at
42 U.S.C. 1383(c)(3).

## II.  Standard for entitlement to benefits

Under the Social Security Act, a disability is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. §423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance); 42 U.S.C. §1382c(a)(3)(A)(concerning SSI payments).  An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. §§423(d)(2)(A) and 1382c(a)(3)(b).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id.  Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment.  20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).  Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b) and 416.972(b).  Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area,

whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work. 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

In determining whether or not a claimant is disabled, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

(1) if the claimant is performing substantial gainful work, he is not disabled;

(2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;

(3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;

(4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is not disabled;

(5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v)(2009). The ALJ performed the required five-step evaluation and determined that: (i) plaintiff had not engaged in substantial gainful activity; (ii) plaintiff had severe impairments due to bilateral carpal tunnel syndrome, dysthymia, right knee degenerative joint

disease, obesity and back pain; (iii) plaintiff did not have an impairment that met or equaled a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1; (iv) although plaintiff had no past relevant work, she had the residual functional capacity ("RFC") to perform other work; (v) plaintiff was not under a "disability" as defined in the Social Security Act.

**III.     The ALJ's decision to deny plaintiff benefits is not supported by substantial evidence and contains errors of law.**

**A.  The ALJ failed to consider the record on the whole and failed to apply the treating physician rule in making his RFC findings.**

It is fundamental that the Commissioner must consider all the evidence presented by a claimant in making a disability determination. See 20 C.F.R. §416.920(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."). The Commissioner "will assess and make a finding about [a claimant's] residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in §404.1545[3]" if a claimant's impairments do not meet the criteria for a Listed impairment under Part 404, Subpart P, Appendix 1. 20 C.F.R. §416.920.

The "substantial evidence" standard has been further elaborated by the Second Circuit Court of Appeals, which has noted

---

[3] 20 C.F.R. 416.945 (as provided in Title XVI). Section 404.1545 then notes that "the limiting effects of all [a claimant's] impairments" are considered in accordance with §404.1529(c).

that "the record as a whole" is considered to determine if the Commissioner's decision is supported,[4] and which adopts the view that "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" Wynn v. Astrue, 617 F.Supp.2d 177, 183 (W.D.N.Y. 2009)(quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

Weighing medical opinions as provided under the regulations is one aspect of considering the record on the whole. When evidence is inconsistent, under 20 C.F.R. §416.927, the Commissioner will weigh all the evidence in making a disability determination. When such evidence is a medical opinion, the regulations provide factors that must be applied to properly weigh such opinions. 20 C.F.R. §416.927(d). The Second Circuit has stated, "[a]fter considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008). Remand is appropriate where the ALJ fails to provide "'good reasons' for not crediting the opinion of a claimant's treating physician." Burgess, 537 F.3d at 129-30 (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.)).

---

[4] Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

The regulations state that "a treating sources's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record.'" Green-Younger, 335 F.3d 99, 106 (2d Cir. 2003)(citing 20 C.F.R. 404.1527(d)(2); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999)). Where a treating source's opinion is not given controlling weight, the Commissioner must nonetheless "apply the factors listed ... [and] will always give good reasons ... for the weight [he] give[s] [claimant's] treating source's opinion." 20 C.F.R. §§404.1527(d)(2) and 416(d)(2).

Here, as argued by the plaintiff, the opinions of plaintiff's treating physicians were not properly considered, and an adequate balancing of the record on the whole is not apparent in the ALJ's opinion. First, regarding the plaintiff's psychiatric-based limitations, the evidence in the administrative record that was most flagrantly ignored was plaintiff's extensive psychiatric history beginning in her childhood. The plaintiff was abandoned at age six months by a mother who had a history of psychiatric illness and substance abuse. The plaintiff's father, not known to have been involved in plaintiff's life in any way, had been shot to death by the time plaintiff was six years old. (Tr. 176).

Plaintiff subsequently lived with grandparents who were compromised by physical illness and died at early ages when plaintiff was approximately fourteen years old. (Tr. 169). The plaintiff was first hospitalized psychiatrically at age 13, and she was eventually a ward of the state for many years. (Tr. 159 - , 320). The record contains ample documentation of plaintiff's difficulty controlling anger since age 11. (E.g. Tr. 170, "[plaintiff] has a repetitive and persistent pattern of aggressive conduct manifested by physical violence against persons and property since the age of 11.")

The ALJ accords "little weight" to the opinion of plaintiff's treating psychiatrist, Dr. Kashin, stating "there is *nothing* in the record to support such limited ability to do work related activities." (emphasis mine). Dr. Kashin opined in relevant part that plaintiff had "a hard time concentrating and has difficulty managing stress and anger, resulting in loss of control." (Tr. 363). To the extent the ALJ relies on the opinion of consultative psychologist Dr. Baskin-Creel, which is unclear, aspects of Dr. Baskin-Creel's opinion are not supported by the record on the whole. Specifically, Dr. Baskin-Creel asserts that plaintiff "would be able to ... relate adequately with others, and appropriately deal with stress." (Tr. 320). The record is replete with examples of the plaintiff's inability to do so, from her psychiatric hospitalizations as a child, to her loss of jobs after

verbal altercations, to her interaction with a disability field office employee, to her behavior during the disability hearing. (Tr. 159-61, 416, 107, 428-30, respectively). Thus, this aspect of Dr. Baskin-Creel's opinion is not supported by the record as a whole.

Moreover, although not contained in his decision, examination of the hearing transcript reveals that the ALJ appears to substitute his own opinion for that of a qualified medical professional. During the course of the hearing, plaintiff used profane language, which occasioned her attorney to ask her to "control the language." (Tr. 428). In response, the ALJ stated, "I'm not really finding anger to be a real mental health problem frankly. It's a personal problem that someone has to learn how to control. Get some help with it. Its – we all control our anger. We have to do it." (Tr. 428). The ALJ went on, stating, "you can talk about it [anger issues] all you want, but it's not going to influence me." (Tr. 429). The ALJ is not a qualified mental health professional, and has no justification for making a blanket pronouncement that anger is not "a real mental health problem." See DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION, TEXT REVISION (2000), "Impulse Control Disorders Not Elsewhere Classified."

Dr. Baskin-Creel opined that plaintiff was mildly impaired in attention and concentration. (Tr. 322). The ALJ minimized this

aspect of the opinion to plaintiff's disadvantage, as he states plaintiff was "*only* mildly impaired" in these domains. (Tr. 18, emphasis mine). Moreover, the ALJ disregards the opinion of the state agency reviewing psychiatrist, who found the plaintiff to have mild to moderate limitations, because the "psychiatrist never examined the claimant" and the opinion is "inconsistent with treatment records and actual examinations." (Tr. 19). Of note, however, the ALJ "gives weight" to the opinion of the state agency reviewing physician who also never examined the plaintiff, because this opinion is consistent with his determination that plaintiff is not disabled. (Tr. 19). In all, although not noted specifically in Dr. Kashin's medication monitoring notes, the notes from other mental health professionals working along with Dr. Kashin at Lake Shore Behavioral Health substantiate plaintiff's struggle with anger control issues. (Tr. 383-93).

Regarding the plaintiff's physical limitations, the ALJ also gives "little weight to [Dr. Ailawadhi's] opinion as there is nothing in the record to support such limited ability to do work related activities...." (Tr. 20). However, Dr. Balderman, a consultative examining physician, opined that plaintiff had right knee mild degenerative joint disease and "moderate limitations in sustained physical activities mainly due to poor weight control and conditioning." (Tr. 325-28).

In the hearing transcript, the ALJ's questioning of plaintiff regarding her treatment for carpal tunnel syndrome, and ultimately about her weight, is illuminating.  When asked why plaintiff didn't have surgery, she stated that her doctor essentially told her "by giving [her] surgery it's not going to help [her] because [she needed] to lose weight." (Tr. 414).  Plaintiff then suggested that because she is on Medicaid, she is "not really getting the best healthcare [she] could get." (Tr. 414).  The ALJ responded, "[w]ait, wait, wait, wait, wait.  You're talking about being overweight.  He's trying to tell you to lose weight so it could help you," to which plaintiff responds "right."  The ALJ then stated, "[a]nd what do you say? That you can't do that or you couldn't --." (Tr. 414).  This leaves the impression that, like plaintiff's anger control issues, the ALJ believes plaintiff is responsible for, and could ultimately mitigate, any limitations she is currently experiencing.

The record contains objective documentation of plaintiff's sleep apnea and carpal tunnel syndrome, not to mention morbid obesity.  While plaintiff's complaints relative to these medical problems do undeniably vary, this should not be fatal to plaintiff's allegations of functional limitation, as the regulations recognize that "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always

allege the same intensity, persistence, or functional effects of his or her symptoms." SSR 96-7p.

Therefore, because the ALJ's decision does not evince appropriate balancing of the record on the whole and is not supported by substantial evidence, I conclude that the ALJ's RFC determination was improper.

**B.   The ALJ made erroneous findings and failed to articulate adequate reasons to support his determination that plaintiff lacked credibility.**

In his decision, after finding that the plaintiff possessed medically determinable impairments that could reasonably be expected to produce the symptoms she alleges, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 20).   The ALJ found that plaintiff's statements were not credible because (i) her allegations of carpal tunnel syndrome were "not consistent with her treatment," (ii) her allegations regarding sleep apnea were not supported in the record, (iii) that the record did "not show complaints of joint pains or any evidence of ganglion cysts," (iii) her testimony regarding her daily routine was inconsistent, and (iv) she "would not answer questions about her ability to concentrate" and her allegations of difficulty with concentration were inconsistent across the record. (Tr. 20-21).

Under the Regulations and subsequent interpretive rulings, when making a credibility finding, in addition to objective medical evidence, an ALJ must consider:

(i)   the claimant's daily activities;

(ii)  "the location, duration, frequency and intensity of the [claimant's] pain or other symptoms;"

(iii) "factors that precipitate and aggravate the symptoms;"

(iv)  any medication the claimant has taken to alleviate symptoms, including the "type, dosage, effectiveness, and side effects" of the medications;

(v)   non-pharmacological treatment a claimant has received to relieve pain or symptoms;

(vi)  any other measures the claimant has used to alleviate pain or symptoms;

(vii) any other factors that might have a bearing on the claimant's functional limitations and restrictions caused by pain or other symptoms.

20 C.F.R. §404.1529(c); 20 C.F.R. §416.929(c); SSR 96-7p.

SSR 96-7p states it is "not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, *supported by the evidence* in the case record ...." (emphasis mine).  Here, although the ALJ specifically outlines the appropriate legal standard, and many of his reasons are sufficiently specific, these reasons are not all supported by the evidence.

First, regarding the inconsistency of plaintiff's complaints with her treatment, an ALJ "may not impose [] [his respective]

notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered...." <u>Burgess</u>, 537 F.3d at 129 (2d Cir. 2008)(quoting <u>Shaw v. Chater</u>, 221 F.3d 126, 134-35(2d Cir. 2000)). Rather, conservative treatment "*may* ... help to support the Commissioner's conclusion that the claimant is not disabled *if* that fact is accompanied by other substantial evidence in the record ...." <u>Burgess</u>, 537 F.3d at 129 (2d Cir. 2008)(citing <u>Diaz v. Shalala</u>, 59 F.3d 307, 314 (2d Cir. 1995)(emphasis mine). SSR 96-7p emphasizes "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects ... without first considering any explanations that the individual may provide, or other information in the case record...." One explanation is an "individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual." SSR 96-7p. Thus, that plaintiff here did not undergo surgery for carpal tunnel syndrome may be explained on this basis. That plaintiff did not undergo injections for carpal tunnel syndrome may also be explained by plaintiff's hearing testimony. She stated that upon participating in a "nerve conduction study," she was in "excruciating pain," and thus did not want to have injections. (Tr. 415).

Next, the ALJ stated that plaintiff testified that she was unable to perform recent jobs "because of the pace, *instead of* a fingering problem or standing problem." (Tr. 21, emphasis mine). This leaves the impression that he posed a question to plaintiff in the alternative, asking her whether she had difficulty at her last position in food service preparation due to the quick pace required or due to a "fingering problem or standing problem." (Tr. 21). In fact, the ALJ never actually posed a question in the alternative. The question, "what was the reason you couldn't keep up the pace? What – was it to [sic] fast or just --" was truncated by plaintiff's interruption, and was leading as asked. (Tr. 416). Her response that "it was to [sic] fast" does not foreclose the possibility that she could not move her hands fast enough to perform the task. (Tr. 416).

The ALJ then discussed plaintiff's apparently undocumented complaints of sleep apnea and falling asleep during the day. He noted, "there were no such complaints made by her to *any treating source*." (Tr. 21, emphasis mine). In fact, such complaints are found in the record. First, a disability field office employee noted on September 15, 2004 that plaintiff "kept falling asleep during the interview." (Tr. 108). Second, plaintiff was referred for sleep studies, and at that time she "complained of daytime sleepiness" and "having fallen asleep at work." (Tr. 316). Further, at the same appointment, it is noted that plaintiff's

score on the "Epworth Sleepiness Scale" indicated "a high chance of dozing during the day." (Tr. 316).

Next, the ALJ states that plaintiff's claims of ganglion cysts and joint pain are unsubstantiated in the record. (Tr. 21, "The medical evidence of record does not show complaints of joint pains or any evidence of ganglion cysts."). This is inaccurate. Plaintiff's ganglion cysts are documented on a number of occasions in the record. (Tr. 263-64, 327, 329, 357). Moreover, plaintiff complained of right knee pain, the ALJ earlier found that plaintiff had a serious impairment due to "right knee degenerative joint disease," and x-rays demonstrate abnormality. (Tr. 15, 196, 253-55).

The ALJ then makes much of apparent inconsistency in plaintiff's recounting of her day's schedule. He states that plaintiff "stated that she started her day at 6 am ... [t]hen she testified that she would be tardy for work in the early morning because of difficulty getting up [which] is inconsistent with her testimony that she was up *every day* at 6 am." (Tr. 21, emphasis mine). In fact, plaintiff did not testify that she was up every day at 6 a.m.; rather, she made the more general statement that her "day start [sic] at 6:00 in the morning." (Tr. 423). Later in her testimony, she explained that on occasions where she needs to take a certain medication, one side effect is that it makes waking in the morning difficult. (Tr. 434). Thus, had the ALJ undertaken a

balanced consideration of the plaintiff's testimony in context, he would have found it to be consistent.

Finally, the ALJ notes apparent inconsistency in documentation of plaintiff's ability to concentrate. (Tr. 21). He asserts plaintiff "would not answer questions about her ability to concentrate," and that she had "previously alleged ... difficulty paying attention." (Tr. 21). I found no indication in plaintiff's hearing testimony that she refused to answer questions regarding her ability to concentrate. Rather, when the ALJ asked plaintiff if she had "noticed any changes in [her] ability to focus and concentrate on what [she's] doing," her initial response was tangential, but she ultimately stated, "[a]nd no, I can't focus all the time." (Tr. 425). When the ALJ asked whether she found her "mind drifting at work or at school," plaintiff directly answered "[y]es." (Tr. 425). There is no indication in the transcript that plaintiff was in any way evasive in answering any of the ALJ's subsequent clarifying questions. (Tr. 425-26).

Further, in support of his assertion that "testing" showed plaintiff's "concentration and attention were intact,"[5] the ALJ refers to a consultative examination performed in 2002 in conjunction with a prior disability application filed by the plaintiff. (Tr. 277-81). First, the "testing" referred to is serial subtraction of 3's, which is merely a cursory and gross

---

[5] Tr. 21.

measure of attention.  Second, in the more recent consultative psychiatric examination, Dr. Baskin-Creel found the plaintiff to be mildly impaired in attention and concentration based on the same measure of serial threes.  (Tr. 322).

Because the seven factors that must be considered by an ALJ in determining the credibility of a claimant's statements under SSR 96-7p were not adequately considered, I conclude that the ALJ's determination that the plaintiff's subjective complaints were not entirely credible was based on improper application of the correct legal standard and is not supported by substantial evidence.

**D.  The ALJ failed to fully develop the record.**

As argued by the plaintiff, an ALJ has an affirmative duty to develop the record in a disability proceeding.  See <u>Batista v. Barnhart</u>, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004)("[t]he responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law," citing <u>Brown v. Apfel</u>, 174 F.3d 59 (2d Cir. 1999)); <u>see</u> <u>also</u> SSR 96-7p ("the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements.").

An ALJ's duty to develop the record intersects with the treating physician rule, as "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."  <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2d Cir. 2008)(citing <u>Rosa v. Callahan</u>, 168 F3d. 72, 79

(2d Cir. 1999)).  Further, where an ALJ finds that a doctor's "records did not give a reason for his opinion that claimant is unable to work ... the ALJ's duty to seek further development of the record before rejecting the opinion" is triggered.  <u>Robinson</u>, 366 F.3d at 1084 (10th Cir. 2004).

Here, the ALJ noted that the opinion of plaintiff's psychiatrist, Dr. Kashin, was given little weight in part because "treatment notes showed no difficulty remembering or paying attention." (Tr. 20).  Dr. Kashin's opinion was supported by more specific examples related to plaintiff's "difficulty managing stress and anger," "difficulty remembering scheduled appointments" and failing to "act predictably in stated situations." (Tr. 364). To the extent the ALJ determined that this was not supported by plaintiff's mental health records, he was obliged to further develop the basis for Dr. Kashin's opinion.  This court therefore finds that the ALJ neglected to apply the proper legal standard by failing to fully develop the record.

When the opinions of plaintiff's treating physicians, consultative physicians, and other treating sources are considered along with plaintiff's hearing testimony, the record provides ample documentation of "objective" findings and substantial evidence that plaintiff does not have the residual functional capacity to perform substantial gainful work.  I therefore find that the plaintiff is disabled within the meaning of the Social Security Act.

## CONCLUSION

For the reasons set forth above, I find that the Commissioner's decision that the plaintiff is not disabled was based on errors of law and was not supported by substantial evidence. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose. I therefore grant plaintiff's motion for judgment on the pleadings insofar as the case is remanded to the Social Security Administration for calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

Michael A. Telesca
United States District Judge

DATED: Rochester, New York
      December 8, 2009